## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

DAVID J. MYERS,                              Civil No. 13-3642 (PAM/JJK)

       Plaintiff,

   v.

Mr. JON KOENINGS, Mr. McCANLEY,
Mr. KEVIN NIKES, Mrs. VILLAREYAL,          **REPORT AND**
Mr. JONES, Mr. McCULLEY, Mr.               **RECOMMENDATION**
FISHER, Mr./Mrs. UNKNOWN
TRANSFER COORDINATOR, Mr. K.
TYCKSEN, Mr. MEANS, and Mr./Mrs.
UNKNOWN REGIONAL
ADMINISTRATIVE REMEDY
COORDINATOR,

       Defendants.

_____

     Plaintiff David J. Myers, a federal prison inmate, commenced this action by

filing a self-styled complaint seeking relief under *Bivens v. Six Unknown Named*

*Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Doc. No. 1).   The

case has been assigned to this Court for initial screening pursuant to 28 U.S.C.

§ 1915A, and for a Report and Recommendation, pursuant to 28 U.S.C. §

636(b)(1) and Local Rule 72.1.[1]   For the reasons discussed below, the Court finds

---

[1] Plaintiff did not pay the filing fee for this action when he filed his complaint, but
instead applied for leave to proceed *in forma pauperis* ("IFP").   (Doc. No. 2.)   The
Court found Plaintiff's IFP application to be deficient, and he was therefore
directed to file an amended IFP application and pay the initial partial filing fee
required by 28 U.S.C. § 1915(b)(1).   (*See* Order dated January 13, 2014;
(Doc. No. 6).)   Plaintiff filed an amended IFP application on February 18, 2014,
(Doc. No. 7), but did not pay any initial partial filing fee.   This Court issued a

that Plaintiff's complaint fails to state a claim on which relief can be granted, and

that this action should therefore be dismissed pursuant to § 1915A(b)(1).

## I.  BACKGROUND AND CLAIMS

Plaintiff David J. Myers is presently incarcerated at the Englewood Federal

Correctional Institution in Littleton, Colorado ("FCI-Englewood").   His claims in

this case arose while he was imprisoned at the Federal Correctional Institution at

Sandstone, Minnesota ("FCI-Sandstone") and also relate to his transfer to

FCI-Englewood.   He is seeking to sue several employees at FCI-Sandstone, as

well as FCI-Englewood employees, an unidentified BOP North Central Regional

employee, and an unknown BOP transfer coordinator.    All Defendants are sued in

their individual capacities.   Specifically, (1) Defendant Jon Koenig is identified as

an FCI-Sandstone employee who is alleged to have initiated proceedings to have

the Plaintiff placed in the Segregated Housing Unit ("SHU") for refusing to provide

a urine sample; (2) Defendant Mr. McCanley is described as a Bureau of Prisons

("BOP") official who was involved in the proceeding which resulted in the Plaintiff's

---

recommendation that the action be summarily dismissed for failure to pay the
partial filing fee.   The Plaintiff then sent a letter to the Court indicating a $41.00
payment made by him to the Court had been incorrectly applied to another case
that he had filed, Civ. No. 13-3644 (PAM/JJK), and requested that the payment be
reallocated to this case.   Based upon this representation by the Plaintiff, the
District Court declined to adopt the Report and Recommendation for dismissal and
ordered that the $41.00 payment be applied to this case.   In light of this partial
filing fee payment this matter is now subject to the initial screening process
prescribed by §1915A.

SHU placement; (3) Defendant Kevin Nikes is identified as a disciplinary hearing officer ("DHO") at FCI-Englewood who improperly signed a discipline report relating to the Plaintiff; (4) Defendant Mrs. Villareal is identified as Plaintiff's Unit Manager at FCI-Sandstone who authorized a Unit Team recommendation for Plaintiff's transfer to FCI-Englewood; (5 and 6) Defendant Mr. Jones is described as a Unit Case Manager at FCI-Sandstone who, along with Mrs. Villareal and Defendant Mr. McCulley, a Unit Team Counselor at FCI-Sandstone, conspired against the Plaintiff's rights in making a transfer recommendation; (7) Defendant Unknown Transfer Coordinator is described an individual in Grand Prairie, Texas who approved the transfer recommended by the Unit Team, resulting in significant hardship, atypical in relation to the ordinary hardship of prison; (8) Defendant Mr. Fisher is identified as the warden of FCI-Sandstone who signed off on the transfer; (9) Defendant K. Tycksen is identified as a Unit Counselor at FCI-Sandstone whose actions with respect to a DHO appeal deprived the Plaintiff of due process rights, resulting in significant and atypical hardship to the Plaintiff; (10) Mr. Means is identified as a former Unit Counselor at FCI-Sandstone whose similar actions with respect to a DHO appeal also deprived the Plaintiff of due process rights, resulting in significant and atypical hardship to the Plaintiff; and (11) Defendant Regional Office Administrative Remedy Coordinator is described as an individual who improperly rejected a BP-10 Regional Appeal, causing the Plaintiff to suffer significant and atypical hardship.

The precipitating event in this matter appears to be Plaintiff's failure or inability to provide a urine sample for drug and/or alcohol testing.   Plaintiff insists that he did not refuse to provide a sample but was unable to do so because he had just used the restroom.   Nonetheless, Plaintiff was placed in SHU and disciplinary proceedings were commenced.   The Complaint in this matter otherwise focuses almost entirely on Plaintiff's efforts to file grievances and administrative appeals, and the actions or failures of various Defendants which served to authorize the disciplinary actions or obstruct the discipline appeal process.

While the Complaint alleges some facts describing the actions of various Defendants in regards to the Plaintiff's placement in segregation and transfer, the basis on which any such action could be construed as a constitutional violation by any particular Defendant is not clearly articulated.   In any event, the Complaint expressly alleges that the Plaintiff's right to due process was violated as a result of Defendants' actions, and each Defendant's involvement relates either to the individual Defendant's participation in proceedings that resulted in the Plaintiff's placement in segregation or the Defendant's involvement in Plaintiff's transfer from FCI-Sandstone to FCI-Engelwood.   In addition, the Plaintiff makes a bare allegation that his First Amendment rights were violated by Defendant Warden Fisher when he authorized the Plaintiff's transfer in order to obstruct the Plaintiff's ability to obtain redress for the underlying grievance that led to the transfer recommendation.

4

As his claim for relief, Plaintiff demands that he be permitted to conduct discovery, including interrogatories, depositions, and subpoenas, to support unspecified claims for compensatory and punitive damages for denial of due process and invasion of his liberty or property interests.

## II.  DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading must be screened pursuant to 28 U.S.C. § 1915A.   That statute, which is part of the Prison Litigation Reform Act of 1995 ("PLRA"), requires federal courts to review the pleadings in every prisoner civil action against governmental entities and employees "before docketing, if feasible or, in any event, as soon as practicable after docketing."   28 U.S.C. § 1915A(a).   The Court must determine which aspects of the pleading are actionable and should be allowed to proceed.   To the extent that the pleading, on its face, fails to state a cognizable claim, it must be summarily dismissed.   28 U.S.C. § 1915A(b)(1).

In this case, the Court finds that Plaintiff has not pleaded any cause of action on which relief can be granted.   It will therefore be recommended that this action be dismissed in its entirety.

### A.  Due Process

The recurring allegations in this matter are that each Defendant was somehow involved in Plaintiff's placement in SHU or his transfer to FCI-Englewood by initiating or participating in an "adverse" action against the Plaintiff, conspiring

against his rights in recommending the transfer, or failing to timely facilitate his

BOP appeals.   As a result of Defendants' actions the Plaintiff alleges that he has

been denied due process and has suffered significant and atypical hardships in

relation to the ordinary incidents of prison life.

It has been consistently determined in this circuit that a prisoner's placement

in segregation, even without cause, is not itself an atypical or significant hardship.

*Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship*,

100 F.3d 640, 642 (8th Cir. 1996) ("demotion to segregation, even without cause"

does not ordinarily implicate any constitutionally protected interests warranting

due process).   The Complaint fails to set forth any claim that the conditions of

confinement in segregation amounted to a violation of any liberty interest that

Plaintiff may have had.   *Id.*   (denial of contact visitation, exercise privileges and

access to religious services for thirty-seven days during segregation confinement

did not amount to a violation of prisoner's constitutional liberty interest).

Insofar as Plaintiff claims that he was denied constitutional due process in

the procedures that led to his being placed in segregation, any such claim must fail

because there is no federal constitutional liberty interest in having prison officials

follow prison regulations.   *Id.* (citing *Kennedy*, 100 F.3d at 643).   Specifically, the

court need not consider the process resulting in an inmate's confinement to

segregation.   *Id*.   The Complaint in this matter does not state a cause of action

for violation of Plaintiff's due process rights with respect to his placement in SHU,

6

the process which led to the placement, or the administrative appeal of such

disciplinary placement.[2]

Likewise with regard to claims based on Plaintiff's transfer to

FCI-Englewood, the Complaint does not allege facts that could establish a claim

that the Plaintiff has experienced significant and atypical hardships in relation to

the ordinary incidents of prison life, and therefore, the pleading does not state a

cause of action based upon the prison transfer.   Plaintiff's contentions that

FCI-Englewood is a more restrictive facility and is farther from his family simply do

not describe the type of atypical and significant hardships that implicate due

process concerns.   *Oldhausen v. Fabian*, No. 07-4593 (MJD/JSM), 2008 WL

2042613, *5 (D. Minn. May 12, 2008) (citing *Freitas v. Ault*, 109 F.3d 1335, 1337

(8th Cir. 1997) (stating that a prisoner had no constitutionally protected liberty

---

2 To the extent that Plaintiff may be challenging the grounds for his discipline, *i.e.*
refusing to provide a urine sample, the Complaint denies that Plaintiff refused to
provide the sample and purports to offer an explanation for Plaintiff's inability to
provide a sample.   However, the Complaint does not directly allege a
constitutional violation.   Indeed, the Complaint itself establishes the legal
sufficiency of the disciplinary action by asserting the existence of "some evidence"
upon which the prison discipline was based.   *Winston v. Petty*, _ Fed. Appx. _,
2014 WL 2807991, *1 (8th Cir. June 23, 2014) (citing *Hartsfield v. Nichols*, 511
F.3d 826, 831 (8th Cir. 2008) (report from correctional officer, even if disputed by
inmate and supported by no other evidence, legally suffices as some evidence
upon which to base prison disciplinary violation).   Also, a vague claim that the
Plaintiff's transfer was a retaliatory action fails as a matter of law because of the
presence of some evidence of his violation of prison rules requiring a urine sample.
*Id.   See also Meuir v. Green Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007)
(in case of retaliatory discipline, merely alleging that act was retaliatory is
insufficient).

interest in remaining in a less restrictive prison environment, and he therefore was not entitled to due process before being transferred to a more restrictive institution)).   Plaintiff has not stated a cause of action for violation of Plaintiff's due process rights with respect to his transfer to FCI-Englewood.

## III.   CONCLUSION

In sum, the Court finds that Plaintiff's complaint fails to state any actionable claim for relief against any of the named Defendants.   Because Plaintiff has failed to plead a cause of action on which relief may be granted, this action must be summarily dismissed pursuant to 28 U.S.C. § 1915A(b)(1).   Notwithstanding the dismissal of this action, Plaintiff will remain liable for the unpaid balance of the $350 filing fee.[3]   He has paid only the $41 initial partial filing fee to date, so he still owes the unpaid portion of the $350 filing fee.   FCI-Englewood officials will have to deduct that amount from Plaintiff's institutional trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2).   Finally, the

---

3 Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action.   However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee."   In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee.   *Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir. 1998) ("The purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time.").   Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee.   *See In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997) ("[T]he PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal.").

Court will recommend that the dismissal of this action count as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

## IV.   RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

It is **HEREBY RECOMMENDED** that:

1.   This action be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

2.   Plaintiff be required to pay the unpaid balance of the Court filing fee in accordance with 28 U.S.C. § 1915(b)(2); and

3.   For purposes of 28 U.S.C. § 1915(g), this action be dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim on which relief may be granted."

Dated: June 30, 2014

                                  s/Jeffrey J. Keyes
                                  Jeffrey J. Keyes
                                  United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 15, 2014,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.   A party may respond to the objecting party's brief

within **fourteen days** after service thereof.   All briefs filed under this rule shall be limited to 3500 words.   A judge shall make a de novo determination of those portions of the Report to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.